UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X    FOR PUBLICATION
JOSE SOTO,

                Petitioner,    **MEMORANDUM & ORDER**

    -against-    06 CV 2979 (RJD)

SUPERINTENDENT JAMES CONWAY,

                Respondent.
------------------------------------------------------X

        For Petitioner:
            Jose Soto, pro se
            03A0763
            Attica Correctional Facility, PO Box 149
            Attica, NY 14011-0149

        For Respondent:
            Charles J. Hynes, District Attorney, Kings County
            By Leonard Joblove and Diane R. Eisner,
            Assistant District Attorneys, of Counsel
            350 Jay Street
            Brooklyn, NY 11201

DEARIE, Chief Judge.

    Pro se petitioner, Jose Soto, petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons stated below, the petition is denied.

## BACKGROUND

    The incident which led to petitioner's conviction began on the afternoon of December 10, 2001. Defendant was sitting in a Jeep parked outside a methadone clinic in the Red Hook neighborhood of Brooklyn when he was confronted by George Lopez. When Lopez attempted to grab petitioner's necklace, a struggle ensued. Soon thereafter, William Muniz, who had been

robbed by petitioner in a prior incident, joined in the fracas. After Muniz stabbed petitioner several times with a pocket knife, a gun emerged, fell to the ground and discharged. Petitioner then picked up the gun and pursued Muniz. As Muniz hid behind a parked vehicle, petitioner, who was being restrained at the time, yelled in Spanish that he was going to kill Muniz and then shot once over the car toward him. Muniz was hit in the neck and, despite immediate hospitalization, died from the wound several days later.

At trial, petitioner's oral, written and videotaped post-arrest statements were admitted in evidence. Petitioner presented a defense of justification. The jury was charged on theories of intentional and depraved indifference murder, as well as two lesser-included offenses and second degree criminal possession of a weapon. Petitioner was acquitted of intentional murder but convicted of depraved indifference murder and the weapons charge. On January 28, 2003, petitioner was sentenced as a persistent violent felony offender to two concurrent terms of twenty-five years to life in prison.

On appeal, petitioner argued: (1) that the court should exercise its "interest of justice jurisdiction" to find that there was insufficient evidence for a depraved indifference conviction, where the evidence was consistent only with intentional murder;[1] (2) that petitioner was denied a fair trial due to the introduction of testimony regarding his prior robbery of the deceased; and (3) that his sentencing pursuant to New York's persistent violent felony statute was unconstitutional under the principles announced in <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000). After

---

[1] Petitioner also argued the separate state law claim that his conviction was against the "weight of the evidence." This claim was denied by the Appellate Division on the merits and, as petitioner acknowledges in his reply, is not reviewable on collateral attack. <u>Lewis v. Jeffers</u>, 497 U.S. 764, 780 (1990) (habeas corpus review is not available for an alleged error of state law).

petitioner's appellate brief was filed and after the state had responded, but before the case was calendared, appellate counsel moved to file a supplemental brief to assert an additional claim of ineffectiveness of trial counsel for failure to preserve a sufficiency challenge regarding the depraved indifference murder count. In her motion to amend, appellate counsel cited an intervening Appellate Division decision, People v. Turner, 781 N.Y.S.2d 163 (App. Div. 2004), which found appellate counsel ineffective for not challenging the effectiveness of trial counsel's failure to object to a lesser-included offense on the ground that it was barred by the statute of limitations. The motion to amend was denied and on January 24, 2005, petitioner's conviction was affirmed. The Appellate Division found petitioner's sufficiency claim to be unpreserved and declined to exercise its "interests of justice jurisdiction" to reach the issue. The Court also found that "defendant's remaining claims either are without merit or do not require reversal." People v. Soto, 787 N.Y.S.2d 901 (App. Div. 2005). Leave to appeal to the Court of Appeals was denied on March 9, 2005. Petitioner's conviction became final ninety-days later on June 7, 2005.

On that day, petitioner moved for a writ of error coram nobis on the ground that his appellate counsel was ineffective for failing to challenge the effectiveness of trial counsel. In that motion, petitioner acknowledged appellate counsel's unsuccessful attempt to amend her brief and cited correspondence in which counsel explained the difficulty of prevailing on the ineffectiveness of trial counsel claim. By order dated October 3, 2005, the Appellate Division denied the writ on the merits. People v. Soto, 801 N.Y.S.2d 546 (App. Div. 2005). Leave to appeal was denied on January 27, 2006.

Petitioner brings this application asserting the same sufficiency and sentencing

3

challenges raised on direct appeal, together with the ineffective assistance of appellate counsel claim asserted in his petition for writ of coram nobis.[2] In his reply to the state's response, petitioner also attempts to raise a new and unexhausted claim of ineffective assistance of appellate counsel for failure to appear at oral argument.

## DISCUSSION

### I. Sufficiency of the Evidence

The meat of this petition is wrapped around a very contentious bone. Although New York has long recognized the legal concept of depraved indifference murder, see People v. Sanchez, 98 N.Y.2d 373, 395-397 (Rosenblatt J., dissenting) (discussing common law and statutory history of DI murder), the New York Court of Appeals' jurisprudence regarding the appropriate charging circumstances and substantive elements of that crime has undergone significant revision of late.

At the time of petitioner's trial, the leading Court of Appeals case on depraved indifference murder was People v. Register, which held that the mental state element of the crime was recklessness, that the actus reus was "conduct creating a grave risk of death," and that "circumstances evincing a depraved indifference to human life" referred to "the factual setting in which the risk creating conduct must occur." 60 N.Y.2d 270, 276 (1983). Petitioner is correct to note that Judge Jasen's dissent in Register "forecast[] the problems which the Court of Appeals is now attempting to correct in its recent opinions." Pet. Reply, 7. Those recent opinions

---

[2] Petitioner's original § 2254 motion also included claims related to the admission of evidence regarding his prior robbery of the victim and "weight of the evidence." However, plaintiff later withdrew these claims in his reply to the state's response to his petition.

4

include: People v. Hafeez, 100 N.Y.2d 253 (2002) (finding that depraved indifference murder excludes "quintessentially intentional" homicides targeted at particular victims); People v. Gonzalez, 1 N.Y.3d 464 (2004) (holding that depraved indifference murder conviction was "unsupportable as a matter of law" where defendant "was guilty of intentional shooting or no other"); People v. Payne, 3 N.Y. 3d 266, 270 (2004) (reversing conviction and noting that recent cases "have made it clear that depraved indifference murder may not be properly charged in the overwhelming majority of homicides that are prosecuted in New York"); People v. Suarez, 6 N.Y.3d 202, 207, 215 (2005) (holding that depraved indifference murder "properly applies only to a small, and finite, category of cases where the conduct is at least as morally reprehensible as intentional murder" and admitting to "depart[ing] slightly from the Register formulation . . . in that we make clear that the additional requirement of depraved indifference has meaning independent of the gravity of the risk"); and People v. Feingold, 7 N.Y.3d 288 (2006) (explicitly overruling Register and Sanchez and establishing depraved indifference as a mental state element of the crime).

Most recently, in Policano v. Herbert ("Policano IV"), the Court of Appeals held, upon certification from the Second Circuit, that: at the time petitioner's conviction became final—June 28, 2001—Register controlled the legal sufficiency of evidence needed to establish depraved indifference; that under New York law a one-on-one shooting or knifing can almost never qualify as depraved indifference murder; that only in a few rare circumstances may a defendant be convicted of depraved indifference murder when but a single person is endangered; and that depraved indifference to human life is a culpable mental state. 7 N.Y.3d 779 (2006). Although the Court found that the change in the depraved indifference element of the crime

5

should not be applied retroactively, it declined to identify precisely when between <u>Hafeez</u> and <u>Feingold</u> the law actually passed "the point of no return" and therefore became retroactively inapplicable.³

This Court's reading of these cases comports generally with Chief Judge Kaye's observation that, "[o]ver the last several years, there have been two distinct threads in our developing depraved indifference murder jurisprudence—only one of which effected an actual 'change' in settled precedent." <u>Policano IV</u>, 7 N.Y.3d at 605 (2006) (Kaye, J., dissenting). The first thread relates to the improper application of the depraved indifference charge in cases where "evidence of a manifestly intentional killing" exists and, as Judge Kaye notes, was consistently applied in <u>Hafeez</u>, <u>Gonzalez</u>, <u>Payne</u>, and <u>Suarez</u>.⁴ <u>Id.</u> Over the course of these opinions, the Court of Appeals repeatedly rebuked prosecutors and lower courts, brightening along the way the line between those instances where depraved indifference murder charges and convictions were and were not appropriate. This exercise culminated with the gate-keeping instruction given

---

³ In addition to the opinions in <u>Policano III</u> and <u>IV</u>, which are discussed below, Judge Block of this district found in <u>Guzman v. Greene</u>, 425 F. Supp. 2d 298 (E.D.N.Y. 2006), before the Second Circuit certified in <u>Policano</u> and before the Court of Appeal's decision in <u>Feingold</u>, that <u>Hafeez</u>, <u>Gonzalez</u> and <u>Payne</u> created new law and were therefore retroactively inapplicable. Separately, the Appellate Division for the Third Division has more recently held that the appropriate breaking point occurred in <u>Payne</u>. People v. Baptiste, 853 N.Y.S.2d 719 (App. Div.) (2008).

⁴ Judge Kaye distinguished <u>People v. Sanchez</u>, 98 N.Y.2d 373 (2002) from this line of cases by citing the fact that the shooting in that case "occurred in an area where children were playing, thus presenting a heightened risk of unintended injury." 7 N.Y. 3d at 606. Though factually correct, this logic, which was first asserted in <u>Hafeez</u>, 100 N.Y.2d at 259, and later reiterated in <u>Gonzalez</u>, 1 N.Y.3d at 468, <u>Payne</u>, 3 N.Y.3d at 272, and <u>Suarez</u>, 6 N.Y.3d at 213, n.7, was never asserted by the <u>Sanchez</u> court, see <u>Suarez</u>, 6 N.Y.3d at 224 (Graffeo, J., concurring in part and dissenting in part) (noting that "the <u>Sanchez</u> opinion neither relied on danger to multiple individuals as a decisive factor supporting a finding of depraved indifference, nor suggested that such a fact was crucial to its reasoning.").

in Suarez that "where twin-count indictments are lodged, trial courts should presume that the defendant's conduct falls within only one category of murder and, unless compelling evidence is presented to the contrary, dismiss the count that is least appropriate to the facts." 6 N.Y.3d at 215 (citation omitted). To the extent that these cases represented merely the application of existing New York state law to new factual circumstances, they do not represent a change in the law and therefore may be considered upon collateral review. See Bunkley v. Florida, 538 U.S. 835 (2003); Fiore v. White, 531 U.S. 225 (2001); Policano v. Herbert, 430 F.3d 82, 87 (2d Cir. 2005), withdrawn and superseded, 507 F.3d 111, 117 (2d Cir. 2007).

The second thread is distinct, but not unrelated. It involves the transformation of the incommodious "depraved indifference" element of depraved indifference murder, which "gradually and perceptibly changed from an objectively determined degree-of-risk standard (the Register formulation) to a mens rea, beginning with our decision in Hafeez in 2003 . . . and ending with our decision in Feingold in 2006." Policano IV, 7 N.Y.3d at 602-03 (majority opinion). It was with regard to this second change that the Court of Appeals held in Policano IV that its post-Sanchez case law did not apply retroactively. Id. at 603.

Petitioner claims that his conviction for depraved indifference murder "was based on legally insufficient evidence . . . where the prosecution's case was consistent only with the theory that appellant intentionally killed the decedent and there was no evidence that appellant acted recklessly." Pet. 3. This challenge, which attacks the propriety of the depraved indifference murder charge, but does not contest the specific charging language related to the "depraved indifference" element of that crime, is similar in nature to the argument raised by the petitioner in Policano. In that case, Judge Gleeson found, taking into consideration the Court of

7

Appeals' then-recent decision in Gonzalez, that the Appellate Division's affirmation of Policano's depraved indifference murder conviction "was an unreasonable application of the principle clearly established by such Supreme Court case law as In re Winship, 397 U.S. 358 (1970), which holds that the government must prove all elements of a crime beyond a reasonable doubt." Policano v. Herbert, No. 02 CV 1462, 2004 WL 1960203, at *9 (E.D.N.Y. Sept. 7, 2004) ("Policano I") (overturning depraved indifference murder conviction where the only reasonable inference from the evidence at trial was that petitioner intended to kill). In its initial affirmation of that holding, the Second Circuit found that Gonzalez and Payne, despite coming down after Policano's conviction became final, "represent not the creation of a new legal principle, but the application of long-settled New York law to new facts. The district court properly used them, as do we, as a means of understanding the applicable law as it existed at the time of Policano's trial and appeal." Policano II, 430 F.3d at 92.[5]

But the mandate in Policano II never issued. Instead the Circuit denied the state's motion to rehear the case en banc, Policano v. Herbert, 453 F.3d 79 (2006) ("Policano III"),[6] and certified a set of case-related questions to the Court of Appeals. In response, the Court of

---

[5] Although the Policano II Court did not provide citations for this holding, this Court finds support in the Supreme Court's decisions in Fiore v. White, 531 U.S. 225 (2001) (holding that where an intervening state law decision "merely clarified" the plain language of a statute, a prior conviction that is contradicted by that decision violates due process) and Bunkley v. Florida, 538 U.S. 835, 841-42 (2003) (clarifying that "[t]he proper question under Fiore is not just *whether* the law changed. Rather, it is *when* the law changed.").

[6] In a vigorous dissent, joined by Judges Walker, Jacobs, Cabranes and Wesley, Judge Raggi argued that to the extent that Gonzalez and Payne "held that a depraved indifference theory should not be charged or that a jury verdict of depraved indifference murder should not stand if a trial or reviewing court concludes that the evidence would only support a verdict of intentional murder, they represent a decided sea change in New York law . . ." and as such, should not be applied retroactively. Policano III, 453 F.3d at 88.

8

Appeals clarified that at the time that Policano's conviction became final, "Register defined New York law, and so this case would have been a close one for the jury to decide," Policano IV, 7 N.Y.3d at 601, and that "on this record the jury was permitted to find him guilty of depraved indifference," id., at 602.

Despite the answers provided in Policano IV, the Second Circuit noted in dicta in its reconsideration of the district court's holding that: "We are still not convinced . . . that the record as we understood it at the time of Policano II included what amounts to evidence that Policano might have acted unintentionally." Policano v. Herbert, 507 F.3d 111, 116 (2d Cir. 2007) ("Policano V"). Nevertheless, that issue became moot when a re-reading of the record revealed evidence that Policano had testified to having been at a methadone clinic, used "three or four" bags of heroin, and consumed alcohol on the day of the killing. In light of this "new" evidence, interpreted through the lense of New York Penal Law § 15.25, which allows evidence of intoxication to negate intent, the Court overturned the habeas grant, concluding that "we cannot say that no rational juror could have found beyond a reasonable doubt that Policano acted unintentionally." Id. at 117.

Although Policano's petition was eventually denied in light of this evidence, nothing in this line of cases would appear to prohibit federal courts from continuing to consider those cases that predate both the finality of a petitioner's conviction and the "point of no return" in the Court of Appeals' evolving jurisprudence. See Fernandez v. Smith, No. 07 Civ. 6310, 2008 WL 2311591, at *16-19 (S.D.N.Y., June 05, 2008) (finding that developments in the law governing depraved indifference murder that took place before petitioner's conviction became final applied on collateral review); cf. People v. George, 43 A.D.3d 560, 562 (App. Div. 2007) ("the Court of

9

Appeals has consistently applied the current law to direct appeals involving depraved indifference, even where . . . defendant's conviction preceded the change of law initiated on June 10, 2003 in Hafeez.") (citations omitted). Furthermore, if this Court is correct in distinguishing between the Court of Appeals' parallel jurisprudential threads regarding "charging errors" and "the depraved indifference element" of depraved indifference murder, a merits-based review of the instant petition—which is premised on the former thread—could also look to those decisions that post-date the finality of petitioner's conviction as applications of existing law to new facts. See, e.g., Bunkley, 538 U.S. 835; Fiore, 531 U.S. 225; Policano II, 430 F.3d at 87.

However, the Appellate Division held that petitioner's sufficiency claim was not properly preserved. Therefore, this Court cannot review the merits of the sufficiency issue absent a demonstration of cause and prejudice. As explained below, in reviewing counsel's performance for cause, this Court considers not what the law of New York was or is, but rather whether, in light of the case law known to him at the time, counsel's conduct fell below an objective standard of reasonableness. Despite the changes that have occurred since, it is unlikely that trial counsel's failure to preserve this claim *at that time* would have constituted ineffective assistance. Because appellate counsel recognized as much in deciding not to raise such a claim, this Court cannot find her failure to make this challenge to constitute ineffective assistance of appellate counsel. As a result, the petition must be denied. See, e.g., King v. Artus, 259 Fed. Appx. 346 (2d Cir. 2008) (summary order) (holding that habeas review was barred where Appellate Division expressly relied on procedural default as independent and adequate state ground for its denial of petitioner's depraved indifference sufficiency claim and petitioner had not demonstrated "cause for the default and actual prejudice as a result of the alleged violation of

federal law, or . . . that failure to consider the claims will result in a fundamental miscarriage of justice.") (citing Coleman v. Thompson, 501 U.S. 722, 750 (1991)).

II.     Ineffective Assistance of Appellate Counsel

   A.     Failure to Challenge Effectiveness of Trial Counsel

In his attempt to get this Court to burrow down to the merits of his sufficiency claim, petitioner reiterates his argument that "appellate counsel rendered ineffective assistance when she did not raise that trial counsel was ineffective when he failed to object to the court's erroneous submission of the depraved indifference murder count to the jury . . ." Pet. 4. It is worth noting that in so doing petitioner acknowledges that trial counsel indeed failed to preserve that issue.[7] On coram nobis, the Appellate Division rejected this claim on the merits, citing Jones v. Barnes, 463 U.S. 745 (1983) and People v. Stultz, 2 N.Y.3d 277 (2004). Soto, 801 N.Y.S.2d 546.

Only if this Court finds that merits-based determination to be "contrary to, or involve[] an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d), will petitioner be able to establish cause for the default of his sufficiency claim. A state court decision is contrary to federal law, as determined by the Supreme Court, if the state court applies a rule that contradicts governing Supreme Court

---

[7] This then is not a case like Fernandez, No. 07 Civ. 6310, 2008 WL 2311591 (S.D.N.Y., June 05, 2008), where Judge Chin found, in light of an incomplete trial transcript, that the Appellate Division had erroneously determined that petitioner's trial counsel failed to preserve his challenge to the sufficiency of the depraved indifference conviction.

11

precedent or the state court confronts a set of facts that is materially indistinguishable from a Supreme Court decision and arrives at a different result. Williams v. Taylor, 529 U.S. 362, 405-07, 413 (2000). A decision is an "unreasonable application" of federal law if the state court's application of the correct governing Supreme Court precedent is objectively unreasonable. Id. at 409, 413; see also Mask v. McGinnis, 252 F.3d 85, 88-89 (2d Cir. 2001); Francis S. v. Stone, 221 F.3d 100, 109-11 (2d Cir. 2000); Jones v. Stinson, 229 F.3d 112, 119 (2d Cir. 2000). However, to be overturned as unreasonable, a decision must not only be incorrect but also unreasonable. Williams, 529 U.S. at 410-411. Nevertheless, the Second Circuit has cautioned that, "although '[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence.'" Mask, 252 F.3d at 89 (citing Francis S., 221 F.3d at 111). To demonstrate constitutionally ineffective assistance, petitioner must show (1) that counsel's performance "fell below an objective standard of reasonableness," Strickland v. Washington, 466 U.S. 668, 688 (1984), and (2) that petitioner was prejudiced by the deficient performance, id. at 692; accord Aparicio v. Artuz, 269 F.3d 78, 95 (2d Cir. 2001) (applying Strickland to ineffective assistance of appellate counsel claim); Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994) (same). Because counsel is not required to advance every possible colorable claim, in order to demonstrate deficient performance to satisfy the first prong of Strickland, petitioner must show more than that counsel merely omitted a nonfrivolous argument. Aparicio, 269 F.3d at 95. As the Supreme Court noted in Jones v. Barnes, which the Appellate Division relied upon in denying petitioner's claim on the merits, "[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker

arguments on appeal and focusing on one central issue or at most on a few key issues." 463 U.S. at 751-52.

The state court's rejection of petitioner's ineffective assistance of appellate counsel claim was neither contrary to nor an unreasonable application of Strickland. Without addressing the potential prejudice of the asserted error, the Court finds that appellate counsel's conduct did not fall below the objective standard of reasonableness.

In a letter submitted by petitioner in his coram nobis petition, counsel acknowledged that "even unpreserved, [the sufficiency claim] is the strongest issue presented by the facts of your case," Resp.'s Ex. G, 5, but went on to explain that "[w]e cannot successfully raise an ineffective[ness] of counsel issue. . . . [because trial counsel's] failure to preserve the depraved indifference/intentional murder issue is not the type of error that would sustain an ineffectiveness claim," id. Counsel also noted that "[t]he court can [nevertheless] reach the merits of the issue through its interest of justice jurisdiction." Id. In an affirmation provided by appellate counsel in response to petitioner's coram nobis petition, counsel further explained that she decided not to argue ineffectiveness of trial counsel "because Mr. Soto's case was litigated in the trial court prior to the favorable Court of Appeals' decisions as to depraved indifference murder in [Payne, Gonzalez, and Hafeez]." Resp.'s Ex. I, 3. Despite the preservation issue, counsel managed to assert the substantive claim by asking the Appellate Division to "exercise its interest of justice jurisdiction [and] reverse the depraved indifference murder conviction as based on legally insufficient evidence . . ." Resp.'s Ex. B, 18. Although the Appellate Division declined to exercise this discretion, counsel's actions and reasoning were both practical and strategic.

Even if this Court were to hurdle the procedural bars and examine the effectiveness of

13

petitioner's trial counsel, it would be unable to determine that his performance fell below the objective standard of reasonableness set forth in Strickland and its progeny. As the Supreme Court pointed out in Strickland, this retrospective examination

> requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . .

466 U.S. at 689. "[J]udg[ing] the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct," id. at 90, this Court would not find trial counsel's failure to preserve petitioner's depraved indifference-related sufficiency claim objectively unreasonable. In People v. Sanchez, decided only five months prior to petitioner's trial, the Court of Appeals held that a point blank shooting presents "such a transcendent risk of causing death that it readily meets the level of manifested depravity needed to establish [depraved indifference] murder . . ." 98 N.Y.2d 373, 378 (2002).[8] As the Court of Appeals later stated in Policano IV, "Sanchez epitomized [the Court's] depraved indifference jurisprudence under the Register regime. . . . [E]ven though such an attack by its very nature presents compelling circumstantial evidence of intent to cause death, we considered the question of the defendant's state of mind to be a classic matter for the jury." Policano IV, 7 N.Y.3d at 599. The fact that subsequent Court of Appeals' decisions have overruled depraved indifference

---

[8] That several later Court of Appeals decisions attempted to distinguish Sanchez on the grounds that there were children playing in the room into which defendant shot, see, note 2 *supra*, is of no matter here because the holding in Sanchez is devoid of such reasoning and those decisions, which came down after petitioner's trial, were in any case not foreseeable to petitioner's counsel at the time.

14

murder convictions where strong evidence of intent existed does not change this Court's analysis of either trial or appellate counsel's performance. See Mayo, 13 F.3d at 533 ("Counsel is not required to forecast changes in the governing law.").

## B. Appellate Counsel's Failure to Appear

In his reply papers, petitioner asserts a new and unexhausted ground of ineffective assistance of appellate counsel. Petitioner claims that:

> appellate counsel did not make oral argument before the Appellate Division, Second Judicial Department, because she was in an automobile accident and on information and belief was hospitalized. [And t]hat no attorney from the Legal Aid Society office appeared in petitioner's behalf . . . . Counsel's absen[ce] during a critical stage of the corrective judicial process was a violation of petitioner's constitutional right to due process . . .

Pet.'s Reply 8-9.[9] The Court construes this argument as an attempt to amend the pleadings pursuant to Fed. R. Civ. Pro. 15 and denies the amendment as time-barred. Because this separate and distinct claim of ineffectiveness "asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth," it does not "relate back" and thus is barred by AEDPA's one-year time limit. Mayle v. Felix, 545 U.S. 644, 650 (2005); accord Porter v. Greiner, No. CV 00-6047, 2005 WL 3344828 (E.D.N.Y. Nov. 18, 2005).

---

[9] Section 460.80 of the New York Code states that "[t]he mode of and procedure for arguing or otherwise litigating appeals in criminal cases are determined by rules of the individual appellate courts. *Among the matters to be determined by such court rules are the circumstances in which oral argument is required and those in which the case may be submitted by either or both parties without oral argument*; the consequences or effect of failure to present oral argument when such is required; the amount of time for oral argument allowed to each party; and the number of counsel entitled to be heard." McKinney's CPL § 460.80 (emphasis added). The relevant procedural rule adopted by the New York Appellate Division for the Second Department and in force at the time of petitioner's appeal states that "[u]nless the Justice designated to determine the application shall otherwise direct, the matter shall be submitted and determined upon the foregoing papers and without oral argument." 22 N.Y.C.R.R § 670.12(b)(4) (as amended Oct. 12, 2003, effective Jan. 1, 2004).

**III.    Sentencing Under New York's Persistent Violent Felony Offender Statute**

Petitioner asserts that his "adjudication and sentence pursuant to New York's persistent violent felony offender statute was unconstitutional under the principles announced in Apprendi v. New Jersey, 530 U.S. 466 (2000)." Pet., 4. As noted above, this claim was rejected on the merits by the Appellate Division. Petitioner acknowledges that he "understands that this argument has been rejected by the Court of Appeals in People v. Rosen, 96 N.Y.2d 329 (2001)," but "contends that the Supreme Court in a recent decision has expressed misgivings of its holding in Almendarez-Torres . . ." Pet.'s Reply, 20 (citing Rangel-Reyes v. United States, 547 U.S. 1200 (2006)). Petitioner is correct in noting that both Justice Stevens in his statement respecting denial of certiori in Rangel-Reyes and Justice Thomas in his dissent from the same express reservations about the continuing validity of Almendarez-Torres v. United States, 523 U.S. 224 (1998), which affirmed the constitutionality of using prior convictions for sentence enhancement. Unfortunately for plaintiff, neither comment constitutes a judicial holding.

Two recent decisions, one from this district and one from a sister-district, have questioned the post-Booker constitutionality of New York's persistent felony offender statute, N.Y. Penal Law § 70.10. Portalatin v. Graham, 478 F. Supp. 2d 385, 394 (E.D.N.Y, 2007) ("Section 70.10 violates the Sixth Amendment because it allows judges to enhance a criminal defendant's sentence beyond what the jury verdict alone would allow if, and only if, such enhancement is supported by judicial findings *other than the fact of prior convictions*.") (emphasis added); Washington v. Poole, 507 F. Supp. 2d 342, 358 (S.D.N.Y., 2007) (same). However, neither of those opinions questioned the continued constitutionality of New York's persistent *violent* felony offender statute, N.Y. Penal Law § 70.08(2), which provides for

16

sentencing enhancements *based solely on prior convictions* and under which petitioner was sentenced. Portalatin, 478 F. Supp. 2d at 392 (distinguishing § 70.08(2)); Poole, 507 F. Supp. 2d at 353-54 (same). Unless and until the Supreme Court revisits Almendarez-Torres, this Court finds that § 70.08(2) continues to fit into the safe harbor for recidivism-based sentencing enhancements established by that case and reiterated in Apprendi, 530 U.S. at 488-90. See, e.g., Washington v. Graham, No. CV-07-1706, 2007 WL 3197335 (E.D.N.Y.f Oct. 26, 2007); Hayes v. Ercole, No. 06 Civ. 4073, 2007 WL 2403339 (S.D.N.Y. Aug. 20, 2007).

## CONCLUSION

The application for a writ of habeas corpus is denied, and the petition is dismissed. Because petitioner has not "made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), a certificate of appealability shall not issue. In addition, this Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith. Coppedge v. United States, 369 U.S. 438 (1962). The Clerk of the Court is directed to close this case.

SO ORDERED.

Dated: Brooklyn, New York
July  14 , 2008

RAYMOND J. DEARIE
United States District Judge